Good morning, Your Honor. My name is Michael Stein, and I'm proud to be here today representing the appellant, Strict Scrutiny Media. With your permission, I'd like to reserve five minutes for rebuttal. Okay, well, just keep an eye on the clock, and we'll try to remind you in around five minutes. Okay, I do have a clock there, so I can see it. May I commence? Yeah, please. Okay. Your Honors, this case concerns the dismissal of a lawsuit based on 12b-6, initially. Because the City of Reno's overall signed scheme regulates content of speech and who can speak, Strict Scrutiny Media have stated a claim. Specifically, the court erred when it dismissed Strict Scrutiny's First Amendment complaint, and it erred when it created a vague order as to what it wanted in the second amended complaint when it gave it leave to amend. The court essentially stated that the court found that there was vagueness, ambiguity, and gave it an opportunity to amend it with facts if they could clarify it. But the court was wrong in its assessment under Iqbal and Twombly in Rule 8 when it assessed that First Amendment complaint, and that flowed into the second amended complaint. Because when the second amended complaint was drafted, the plaintiff was trying to put in as much as it could to satisfy what it's trying to understand was missing from its First Amendment complaint without much help from the court in its order. Counsel, could I ask you to address the specific question of the rules on on-premises signs? Do you either have an on-premises sign at this point, or have you alleged in either of the complaints that you intend to operate on-premises signs? Yes, this does touch on the notice you received for taking judicial notice. I'll touch on that as quickly as I can. There was an on-premise sign that was built, and there was a lawsuit that was premised on a breach of contract between the landowner and strict scrutiny media. That lawsuit went to trial, and the judge ruled that there was a breach of contract on the part of strict scrutiny. The problem with that decision is if strict scrutiny prevails in this forum, then that breach of contract really is not valid because it was premised on the idea of whether or not it had the right to build these signs and whether the ordinances that are a challenge in this case are unconstitutional. The court ordered that that sign be removed within, I think, eight days during the COVID-19 period. The strict scrutiny has taken the sign down to the base pole and is still within its period of time to appeal that decision and is likely going to appeal that court's decision. This is the sign at the Odd Fellows building, and it's your view that that constitutes an on-premise sign, and what you're saying is if you win here, you would install it? Well, we'd have the appeal, and if the court found we were not in breach of the contract, yes. If the Nevada Supreme Court or our new appellate court were to reverse, we would be able to put that sign back up. I realize the decision of which we've been asked to take judicial notice postdated your complaint, but just looking at the complaint, it wasn't clear how you were injured by the on-premises sign regulations at all because you had the sign there. You may recall in the pleadings, I think that appeared in the second amendment complaint, after the sign was permitted to be built. That's very important to understand. The sign was a billboard in your mind was placed on. The city came and slapped a stop work order on that sign to stop that. The stop work order, when it was supposed to identify what it is that is wrong with it, they cited a code section, which is nothing more than the title. They cited, I think it was 18.16, and when you look at 18.16, it has one word, signs. The alleged violation that created the stop work order was nothing more than a word, signs. Through the trial and cross-examination of the city, I was the trial attorney in that case. Through that process, what we learned is that a city employee was called by a senior manager at the city and was ordered to go over from his home and put this stop work order. He was not given a reason why or a basis for it. He was just, get something on there. We'll figure it out later. This is why the strict scrutiny alleged that this amounted to a type of prior restraint. That's exactly what it was. That's where we stand. Let me ask you on the first amendment complaint. This is Judge Reyes. Did you allege that strict scrutiny had a concrete plan to build future signs or that any landlords decided building permit through strict scrutiny? I don't recall if the word concrete plans were in. I'm not sure if it's quoted, but the complaint does allege that it had leases on other properties. On the property that we just discussed, which was called the Stardust property involving the Oddfellows, and that they had leases on other properties. That strict scrutiny had the leases? Yes. Certainly standing because it has leases. It has an intent to build signs. It has an intent to have a speech, some non-commercial, some commercial. It found it frivolous to go for a permit because when the officer of strict scrutiny went to the city to ask for a permit explaining that these signs would contain, wanted a permit for non-commercial speech, they were denied until they wouldn't be getting one. Applying for any permits without going forward with this lawsuit would have been a superfluous act. By not being allowed to build and express speech, it was injured by having its speech suppressed and of course, monetary damages by not having revenues. I want to follow up on a question that Judge Miller asked earlier regarding standing. Let's assume you have an injury connected to the on-premise regulations. I'm struggling on the redressability part because any relief that we would give you under the on-premises rules is not going to fix the problem that the off-premises ban exists. It seems that the off-premises ban is really at the heart of your client's business model. Even if we were to do something for you on the on-premises regulations, what does that actually accomplish when really you're after the off-premises signs? Well, noting that this case was dismissed at the pleading stage. Whether it's off-premise or on-premise, the argument is that because these on-premise signs can effectively be used for both, because there are exemptions for off-premise signs and on-premise signs that would allow an off-premise sign depending on who the speaker is. So, for example, if you had a railroad, they could speak on anything. There's no definition in the code what railroad signs mean. So, whatever it means, they can speak on any subject matter because if they can speak on something with railroads, they can certainly also speak on non-commercial speech. So, there's these exemptions that affect content and also are affecting who the speaker is. So, I want to follow up on that. Your allegation and complaint are that the harm that you've suffered is lost rental value for these signs that strict scrutiny built, that it would have been able to lease them to customers to use a message and they've lost all this revenue from that. But that's only going to work if you have the ability to do off-premise signs. Isn't that right? Right, right. So, then how do we fix anything for you if we look at on-premises rules? If the restrictions, if the prohibition of off-premises signs is only for certain speakers and there are other speakers that can put up signs, but they can put anything on that sign they want, then you have an unconstitutional ordinance or it's really a licensing scheme. It's not just one set of ordinances, their licensing scheme. And if it's unconstitutional, then strict scrutiny and should be allowed to put up signs because others are through exemptions and those exemptions allow them to speak anything they want. So, for example, the hospital can certainly speak and it can speak on presumptively anything it wants, whether it's commercial or non-commercial based upon the substitution ordinances. So, that's our on-premise signs, right? The hospital can do what it wants in an on-premise sign. But there are also off-premise exemptions too. I thought that it was a total ban for off-premise signs. No, there are some off-premise signs for temporary signs. Temporary signs, I think the, what do they call it? The seasonal special event signs. But even if we just weren't dealing with on-premise signs, make the distinction between off-premise and on-premise when on-premise can put up anything it wants becomes content-based. It's not just a location-based because they're speaking whatever. So, without being able to show that they can meet strict scrutiny as to why that distinction should be allowed and the city certainly never put forth one. Well, I mean, it may, I mean, there's some question as to whether it's content-based, but even if we agree with you on that, isn't it still, it's a restriction on commercial speech, isn't it? Because the definition of an off-premises display is one that's advertising or promoting commercial interests. So, doesn't it get intermediate scrutiny under Central Hudson? Under the substitution, you can have other speech. You can have non-commercial speech as well. But the speech that is subject to regulation as an off-premises advertising display is only going to be commercial speech, isn't it? No, I mean, that I think is the bootstrap. You define a billboard as saying it means off-premise advertising goods and services. But the truth is, it can also have non-commercial speech on that same sign. And if you are an exempt player, then you can have either speech and therefore it's favoring the speaker. Councilor, you're down to about two minutes. May I reserve two minutes, eight seconds, please? Thank you. We'll hear from the city now. Thank you, your honors. My name, may it please the court, my name is Shandini Sendal. I represent the appellee in this matter, the city of Reno. The city would just like to start with the first main point, which you kind of touched upon, which is the request for judicial notice, which was filed 10 days ago. And that was in regards to, as Mr. Stein pointed out, the judgment that was issued in the state court matter. And that was a matter that strict scrutiny brought against the landowner Oddfellows. Oddfellows also was a party in this matter. They were brought in after the city initially filed a motion to dismiss for lack of Article 3 standing. So they were brought in under the first amendment complaint. And under that purpose, the city argues just quickly that under federal rules of evidence 201, this court is permitted to take judicial notice of adjudicated facts and notice the judgment. And under Dawson v. Mahoney, can take judicial notice of the state court orders. Council, let's say we agree with you that we can take judicial notice. What does that mean for this case? So what it means for this case is one thing I want to highlight is strict scrutiny media in their own appellate brief states that they are an outdoor advertising company. They don't purport to own any real property. They typically are in the business of entering into licenses and ground leases with the owners of real property. And what they essentially do is they erect billboards. And they get a fee or a license fee, and they manage these billboards. So really, to the point you were getting at with Mr. Stein, the off-premise code, they are really players in the off-premises sign code. The city's sign code is split into two articles. Article 1 is the on-premise sign code. Article 2 is the off-premise sign code. And for the purpose of that judgment there, what happened essentially is strict scrutiny oddfellows entered into a ground lease, as they purported to be an off-premises advertising company, and then erected three signs, as noted in the district court's order in partially granting, partially dismissing the second amended complaint. They did a standing analysis, applied the LeJuan factors, and stated that strict scrutiny had standing based on the three existing signs on oddfellows' real property, and that they had the intent to build future signs. But since that time, as the lawsuit has progressed, two of the signs, they were called cemetery signs in the brief, stoker signs, those were taken down. Oddfellows sought to voluntarily be dismissed from the lawsuit. They were dismissed from the lawsuit. At that point, this litigation ensued, and they wanted to take down this Stardust sign, their last remaining sign on their property, which, as you mentioned, was an on-premise sign, which, because it was an on-premise sign, actually oddfellows is the one who went and applied as the property owner to get that sign permit. And they hired a third-party sign contractor to put that up. And it was upon the issuance of that stop work order that that sign company said, hey, no, you know, we don't want to violate city code. We're out. And it was strict scrutiny that had that sign fully erected. And so for that purpose, their standing really was given by the district court based on the existing signs. Because in the First Amendment complaint, initially the court said, hey, future signs, we're kicking that out. That's not a basis for standing. But in the Second Amendment complaint, they said, well, you have three signs up plus the future signs. We find that that is enough of a standing to go ahead and move forward. But it's strict scrutiny's burden under FW slash PBS Inc. versus City of Dallas to show that they have standing. And they must continue to show they have standing for each claim. And that's Summers v. Earth Island. And what they've really kind of failed to do now, this judgment has essentially taken away the property interest of strict scrutiny of that sign. They no longer have the property interest of that But it's the city's understanding that the time to appeal has lapsed. That order was entered April 10, 2020. You know, a filing was put in place, and they had a certain amount of days to appeal. And that time period has lapsed. My understanding is two Fridays ago, I confirmed I don't have the exact dates in front of me, and I can provide that to the court. But strict scrutiny has not sought appeal on that. So that's final. They no longer have a contractual property right to that So now really, I mean, under appeal here, the city would say under your standard of de novo review and standing, the city would argue that strict scrutiny really doesn't have standing now. All they have is these future existing signs that they might may put up. But the three signs that they actually had in the ground, which were all on Oddfellow's properties, have been removed. And Oddfellow has removed itself from this lawsuit at the same time. In addition, strict scrutiny is part of their relief. They stated this as a partial motion for summary judgment, because what they really requested is the court give them a permanent injunction to keep their Stardust sign erect. But that sign's gone. Their property right to that sign is gone. And I would argue they're not a landowner. Those three signs are gone. And under the analysis of LeJuan, they really lack standing, and this case is moot for lack of actual injury. There's nothing you can do to Judge Hunsaker's point of actually giving any relief. It's far too speculative, would be the city's argument there. Well, if I understood Mr. Stein's argument, I mean, maybe I misunderstood it. I thought he was arguing that because the on-premises statute was arguably content-based, it infected the off-premises statute. It was the system of claiming it was content-based as opposed to any specific ordinance. Sorry. And so I can address that. So through the briefings, there was only some specific sections of code that were challenged. And perhaps I should say, Oddfellow, the real property owner, was a major player and party in this case up until even actually after the city and strict scrutiny filed their motions for summary judgment. It was only after those motions were filed that Oddfellow was voluntarily sought dismissal. And during that time, all of the court's orders, so if you look at their order on the first amended complaint, and then you look at their order for the second amended complaint, and those are on the record, on volume one, the first amended complaint is under volume two, page 527 to 535. Second amended complaint is volume one, page 190 to 207. There, the court splits upstanding and says, as an off-premises advertising company, strict scrutiny, you only have the right to challenge under, on the off-premises code, the total ban on new billboards being constructed in the city. It was Oddfellows, as the real property owner who was given the right, it's their on-premise sign, they're the one who filed for the permit. They have the right to challenge the on-premises code. And there, there was five different provisions that the court granted leave for them to challenge. The issue there, and the court, actually, the city addressed those provisions in its motion for summary judgment order, in its brief, which is under volume one, page 91 through 110, because at the time the city presented, drafted its motion for summary judgment brief, Oddfellows was still a party in the case. So the city addressed those against Oddfellows. And there, the city argued that, hey, these are not content-based discriminatory provisions. They're facially content neutral. And I'm happy to walk you through specific provisions if you like, because there's a couple provisions that strict scrutiny argues, under 18, article two, or, yeah, article two of the off-premise code, 1816.911, which is regarding special events, 1816.910, which is regarding off-premises billboard exemption for private property owners. And in both of those instances, the district court stated it was a categorical mistake. I should back up for 1816.910. The district court stated it was a categorical mistake to deem non-commercial speech as either on-site or off-site. You know, that's just, it doesn't, billboards only contain commercial speech. And Judge Miller got to that point earlier with Mr. Stein. On-premise versus off-premise only has meaning in context of commercial speech, to distinguish between services sold on-site and those sold elsewhere. So it's really trying to compare apples to oranges, and it's trying to kind of confuse the language of the code to create a false, you know, unconstitutionality of the city's sign code. It just doesn't exist. It's not there. And I thought the district court did a great job in its orders, and I know that there's a lot of briefs in this case, and you know, to the point real quick, Mr. Stein said that, you know, that there was a prior restraint in the first amended complaint. I'll quickly just address that, is that, you know, the city argued that if appellants felt strongly about that dismissal, you know, they could have stood on their complaint, they could have sought to get a final order, and appealed their first amended complaint. But they did not. They moved forward, they answered the complaint, and they alleged more claims, you know, on behalf of oddfellows as an on-premise sign owner, as an on-premises landowner with, you know, standing to bring challenges to the city's on-premises sign code. And then it brought certain challenges through strict scrutiny for its off-premises basis. And that is where the court kind of went methodically through its order dismissing the second amended complaint. That was a 27-page complaint that they filed, and the court issued an 18-page order going through, breaking down three causes of action. The third cause of action had eight counts, and really explaining to us, you know, what, why they made the decisions that they made, and why they did not feel that there was a content, that the city's sign code was facially content neutral, the exemptions that were noted were not content-based discrimination. Did you have a question? Or I thought, Judge Miller, you were going to ask a question. Okay. I do. Before you launch into it, I do have a question. So could strict scrutiny apply for an on-premise permit? No, Your Honor. And I can expand. The reason would be because they don't own any land. A landowner would apply for an on-premises sign, because... What provision of the code specifically says who's entitled to apply for an on-premise sign? It's not an on-premises. It would be under 1816, Article 1, on-premises signs, 1816. And I think in the city's appellate brief it filed, I filed an addendum, and I included some sections of the code that the strict scrutiny has raised as being unconstitutional. And so they're in there if you would like to take a look at those. I just need a specific provision that identifies who is entitled to even apply for one of those permits, because I didn't... I could have missed it, but I didn't see it. Yeah, so I know under our building code is where the general section of code, so it's 1416 is the building code, and it's 1416 is signs, and under Article 2 is permits. So 1416.040 required. A sign shall not be erected, re-erected, constructed, or altered except as provided by this code, and after a permit for the same has been issued by the building official. So they would have to come in, apply for a building permit. I mean, I get that they need a permit, or that a permit has to happen before one of these signs get built, but that doesn't tell me who's entitled to apply for a permit. So, I mean, if strict scrutiny owns the sign, which it says it does, it has a lease with the landowner, it owns the physical sign, why can't it go in and get a permit for an on-premise sign? So are you talking about the Stardust sign that no longer is their property? I'm just talking generally. Just generally? Yeah. Okay, so, and that would be because you would need, they would need the property owner's permission, and I guess working with the property owner, they could come in with their lease and kind of help facilitate the application of an on-premise sign. And presumably that could have happened in this case, right? Because Oddfellows was on board, at least to start? Correct. So there was nothing inherent in the code that would have prevented strict scrutiny from being the applicant for the permit? Assuming that they had the permission of a real property owner, correct. And why does it need to be the owner? I mean, are you getting that? Because the definition of on-premises is that you're promoting the interest of, you know, commercial interest principally sold, available, or provided on the premises, right? So it could be a lessor, right? Correct. Oh, okay, good. All right. And I would just clarify, simply strict scrutiny's involvement in the application process with the landowner to get that sign permit would still subject, for example, in this case, the actual notices of violation for the illegal signs were issued to Oddfellows. Now, this judgment, as we mentioned, and the notice of violation fees that had been imposed by the city on behalf of Oddfellows. So to your point, because of the ground lease or the lease agreement that they had engaged in. So they do have that, but I would argue, as the city pointed out in the motion for summary judgment and in its brief, that those provisions of code are content neutral and do not create an unconstitutional basis for any sort of violation of code or the constitution. So as a lessor, would strict scrutiny under the code be entitled to apply for an on-premises sign? If they had the permission, had a ground lease or a license from a land property owner. If they were leasing the property space for the sign, would that give them standing? Correct. So for their future billboards, for example, they stated they have these other leases. As long as they went to whoever these owners of this land is and worked with them and came to the city and sought a permit, they could fill out a sign application permit and seek, go through the strict scrutiny's name, the strict scrutiny as the applicant. No, so no. For an on-premise sign, it would be in the name of the land owner. It would be... What about the lessor? I think you just told Judge Miller a lessor could also be an applicant. So you have to have a licensed contractor on the actual building permit, is my understanding, for the permit application. So that person's name, the actual... So if strict scrutiny media is a licensed contractor to erect these signs, which I would assume most are who engage in this, like Lamar Advertising or some other ones you might be familiar with, outdoor advertising, they actually are licensed contractors to erect these signs. Their name would be on the permit along with the property owner. Or lessor. Yes. For example, in the Stoker sign, or it's the Stardust sign, for some reason, strict scrutiny's name wasn't on it. They hired Sign Crafters, another company that engages in erecting signs, outdoor advertising displays. And so their name was on it. And then once they received the notice, as I said, for the stop work order, they halted work and their services were no longer needed. And then strict scrutiny took over and put up the sign. But because they were not engaged in the beginning as the licensed contractor, their name was not on the signed permit. They would need to be a licensed contractor. Thank you, Council. Mr. Stein? I wanted to clarify something. The notice of appeal period has not run. In Nevada, it does not run from the time that the order is signed or entered. It's run from the time of notice of appeal. Just to clarify, other than Oddfellows and the situation with that sign, have you alleged an intent to put up other on-premises signs? I don't know. I don't know if that was alleged, whether any particular sign was on-premise or off-premise. It would depend on the circumstances of the leases. But we have alleged that we have seven to eight leases. And speaking to this permitting, it was alleged, and therefore, the fact should be taken as true, that Michael Jacobs, who is the sole officer of strict scrutiny, went in and asked to apply for a permit for this property to allow non-commercial speech clothes, which was denied until he wouldn't be given one. I want to get in touch with you at my last minute to remind the court that although the city would ban all strict scrutiny media billboards, it doesn't ban all billboards. And it doesn't ban, for example, special event billboards, campaign signs, which could be on-premise or off-premise. So that alone is a content-based restriction. And under certain circumstances, speaker-based restriction as well. And that would render that unconstitutional under the Reed case, and a case that just came out of the Ninth Circuit yesterday, which we will supplement under the local rules. I'm referring to the Horseshoe case. All right. Unless there are further questions, thank you, counsel. I thank both counsel for their very helpful arguments this morning, and the case just argued is submitted. Thank you.
judges: Miller, Hunsaker, Rayes